**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equity Income Partners LP et al., | No. CV-11-1614-PHX-SMM |
| Plaintiffs, | |
| v. | **MEMORANDUM OF DECISION AND ORDER** |
| Chicago Title Insurance Company, | |
| Defendant. | |

Pending before the Court are Defendant Chicago Title Insurance Company's Motion for Partial Summary Judgment, (Doc. 100), and Plaintiffs' Motion for Partial Summary Judgment Re: Undisputed Damages, (Doc. 112).

## BACKGROUND

In May 2006, Equity Income Partners ("EIP") loaned Keith Vertes and Scott Mead (collectively the "Owners") each $1,200,000 in connection with the purchase of two 13.3 acre parcels of land (the "Properties"). (Doc. 22-1.) The loans were secured by separate deeds of trust (the "Deeds of Trust") on the Owners' respective parcels. (Doc. 22-3.) The Deeds of Trust were recorded along with two assignments granting Galileo Capital Partners ("GCP") an 80% beneficial interest in each security agreement. (Doc. 22 ¶ 8.)

As part of the transaction, the Owners purchased title insurance from Transnation Title Insurance Company ("Transnation"), (Doc. 26-1 at 1-16), while EIP and GCP (collectively "Plaintiffs") purchased lender's title insurance from Ticor Title Insurance Company ("Ticor"), (Doc. 22-7). At the time, Ticor was a subsidiary of Chicago Title

Insurance Company ("CTIC"), but later merged into their parent company. (Doc. 7 ¶ 4.)

Plaintiffs' lender's title insurance policies (the "Policies") insured their secured interests against loss for up to $2,400,000 incurred "by reason of: . . . [u]nmarketability of title; [or] [l]ack of a right of access to and from the land." (Doc. 22-5 at 8, 20.) The Policies further provide, in relevant part:

> Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. . . .
> Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company[.]
> . . .
> Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.
> . . .
> When [the Insured releases their interest in the insured mortgage] and the Insured has knowledge of any claim of title or interest adverse to the title . . . of the insured mortgage, as Insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the Insured claimant of the Company's right of subrogation.

(Id. at 11, 23.)

In September 2006, the Owners learned that they were not able to legally access the Properties, and in January 2007, Plaintiffs submitted a claim to Ticor for lack of access under the Policies. (See Doc. 22-13.) The following month, Ticor denied the claim because Plaintiffs had not provided proof of loss. (Id. at 6-7.) Within a few months of discovering the title defect, the Owners stopped making loan payments and were in default. (Doc. 22 ¶ 19; Doc. 26 ¶ 20.) Plaintiffs forewent their immediate foreclosure remedy based on Transnation's promise to make interest payments while it attempted to cure the title defects in an action brought in Maricopa County Superior Court. (Doc. 22 ¶ 21; Doc. 26 ¶ 23.)

After three years of litigation, the interest payments ceased because summary judgment was entered against Transnation. (Doc. 22 ¶ 25.) Plaintiffs contacted CTIC on October 26, 2010, again seeking compensation under the Policies for their insured losses. (Doc 114 ¶ 45.) Thereafter, Plaintiffs exercised their right of foreclosure, and purchased the properties at a Trustees sale on January 28, 2011, by making full-credit bids. (Doc. 26 ¶ 26.)

1  Plaintiffs commenced the instant action on July 21, 2011, by filing a Complaint in
2  state court; Defendant removed to this Court on the basis of diversity. (Doc. 1.) On
3  September 23, 2011, CTIC tendered to Plaintiffs a payment in the amount of $343,000,
4  which was CTIC's calculation of Plaintiff's compensable loss. (Doc. 102 ¶ 22; Doc. 113 at
5  12.) In an Order denying Plaintiffs' Motion for Partial Summary Judgment, Judge Snow
6  found that, under the Policies, the appropriate date for calculating the diminution of value to
7  the Properties was the date the loans were made.[1] (Doc. 46 at 11.)

Currently before the Court are the parties' fully briefed cross-motions for partial summary judgment. (Docs. 100, 112, 115, 118, 119, 121.) Defendant requests the Court rule as a matter of law: (1) that Plaintiffs' credit bids at the Trustee's sales constitute actual payments against the principal; (2) that such credit bids in excess of the Properties' fair market value impaired Defendant's contractual subrogation rights; (3) that Plaintiffs' modification of the terms of indebtedness constituted novation; and (4) that Defendant's conduct has not been in bad faith. (Doc. 100 at 1-2.) Plaintiffs requests the Court to find as a matter of law that Plaintiffs are entitled to a final, executable judgment in the amount of $1,003,000 against Defendant.

## LEGAL STANDARDS

### I.  Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g). "The substantive law determines which facts are material; only disputes over facts that might affect the outcome of the suit under the governing law properly preclude

---

[1] The case was transferred from Judge Snow to this Court after the cross motions for partial summary judgement were briefed. (See Doc. 122.)

the entry of summary judgment." Nat'l Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A material fact is subject to "genuine dispute" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. Thus, a party opposing summary judgment is merely required to adduce "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Id. at 249 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

To adduce sufficient evidence, a party proposing or opposing summary judgment must either cite "to particular parts of materials in the record," or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). However, if the proponent's motion is properly supported, the opponent "must introduce some significant probative evidence" beyond a "mere scintilla of evidence," or evidence that is "merely colorable." Bahrampour v. Lampert, 356 F.3d 969, 974 (9th Cir. 2004) (quoting Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997)).

**II.   Choice of Law**

A federal court sitting in diversity applies the choice-of-law rules of the forum state in which it sits. Mortensen v. Bresnan Commc'ns, LLC, 722 F.3d 1151, 1161 (9th Cir. 2013).

**A.   Insurance Contracts**

Absent an express choice of law provision, Arizona follows the Restatement (Second) of Conflicts of Laws (1971), "to determine which state's law applies in a contract action." Cardon v. Cotton, Lane Holdings, Inc., 173 Ariz. 203, 207, 841 P.2d 198, 202 (1992). The Restatement specifies that rights created pursuant to an insurance contract "are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy." Restatement (Second) of Conflict of Laws § 193; see Beckler v. State Farm Mut. Auto. Ins. Co., 195 Ariz. 282, 286, 987 P.2d 768, 772 (App. 1999) (quoting Restatement (Second) of Conflict of Laws § 193).

Interpretation of an insurance contract is a question of law, provided "the terms of the agreement are plain and unambiguous." Smith v. Melson, Inc., 135 Ariz. 119, 121, 659 P.2d 1264, 1266 (1983); accord Sparks v. Republic Nat. Life Ins. Co., 132 Ariz. 529, 534 647 P.2d 1127, 1132 (1982). A clause is ambiguous if it is susceptible of more than one interpretation, and thus creates a question of fact concerning the intent of the parties. Miner Contracting, Inc. v. Toho-Tolani County Imp. Dist., No. 1 CA–CV 10–0665, 2013 WL 5275926, ¶ 31 (Ariz. Ct. App. Sept. 19, 2013). A clause is not ambiguous merely because the parties disagree about its meaning; rather, no ambiguity exists if the parties' intent is clear from the clause's language in light of "all the circumstances." Smith, 135 Ariz. at 121, 659 P.2d at 1266.

### B. Full-Credit Bid Rule

" 'Credit bid' means a bid made by the beneficiary in full or partial satisfaction of the contract or contracts which are secured by the trust deed." Ariz. Rev. Stat. ("A.R.S.") § 33-801(5). "In other words, the lender may 'bid' the money it already lent," and in Arizona, includes interest and the cost of trustee's sale. M&I Bank, FSB v. Coughlin, 805 F. Supp. 2d 858, 865 (D. Ariz. 2011) (opinion by Wake, J.) (citing A.R.S. § 33-801(5)). A "full credit bid" occurs when the lender bids "the entire amount of unpaid principal, interest, and trustee's sale expenses." Id.

Full-credit bids trigger some important collateral consequences, viz., the underlying secured obligation is deemed to have been fully satisfied. By way of analogy, if a full-credit bid results in the acquisition of the property, then the lender effectively pays to itself the outstanding balance of the debt, as well as interest and the costs of foreclosure, in exchange for title to the property. Cf. Nussbaumer v. Sup. Ct. in & for Yuma Cnty, 107 Ariz. 504, 505-07, 489 P.2d 843, 844-46 (1971) (recognizing that full-credit bid satisfies mortgagee's interest, thereby precluding lender's further action to recover for loss of security).

### C. Waiver of Affirmative Defense

In diversity of citizenship cases, "state law defines the nature of the defenses, [but] the Federal Rules of Civil Procedure provide the manner and time in which defenses are

raised." Healy Tibbitts Constr. Co. v. Ins. Co. of N. Am., 679 F.2d 803, 804 (9th Cir. 1982). "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . ." Fed. R. Civ. P. 8(c). Notwithstanding a party's failure to raise an affirmative defense in a responsive pleading, the Court may nevertheless permit a party to include such a defense in subsequent pleadings, provided there is no prejudice to the adverse party. Simmons v. Navajo County, 609 F.3d 1011, 1023 (9th Cir. 2010). However, the Rules are conspicuously silent about what constitutes an "avoidance or affirmative defense."

Historically, Rule 8(c) is a descendent of the common law plea of "confession and avoidance," which forced a defendant to choose between denying the elements of the plaintiff's cause of action, or conceding that the plaintiff brought a prima facie case and alleging new material to defeat the otherwise valid cause of action. 5 Wright & Miller, Federal Practice and Procedure: Civil § 1270, at 558 (3d ed. 2004) [hereinafter Wright & Miller]. This tradeoff was eliminated by Rule 8(d), which permits a pleader to both deny the substance of the allegations and interpose other affirmative defensive matters.

Fortunately, there are a handful of generally accepted principles regarding whether the Federal Rules require a defense to be raised in a responsive pleading. Most broadly, a defense must be raised in the defendant's answer if it will defeat the plaintiff's claim, even if all the allegations in the complaint are true. See id. at 561. More specifically, there are two categories of affirmative defenses that reflect Rule 8(c)'s historical roots: (1) "those that admit the allegations of the complaint but suggest some other reason why there is no right of recovery;" and (2) "those that concern allegations outside of the plaintiff's prima facie case that the defendant cannot therefore raise by a simple denial in the answer." Id § 1271, at 585. By corollary, "[a] defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense." Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002).

One standard that has been suggested to distinguish between defenses that must be pled affirmatively from those that are embraced by a denial is whether the "particular issue arises by logical inference from the well-pleaded allegations in the plaintiff's complaint."

Wright & Miller § 1271, at 600. The "logical inference" approach considers whether the defendant's denial implicates "a necessary or intrinsic element of the plaintiff's claim," thereby providing notice that the matters were in issue. Id. This approach has been criticized as providing limited utility because identifying the matters of the plaintiff's case that are at issue is precisely what affirmative pleading rules seek to facilitate. Id. at 601.

A second more holistic approach balances factors of policy, fairness, and probability. Id. at 602. Policy refers to the underlying purpose of Rule 8(c), viz., giving the adverse party notice of the defense and an opportunity to argue why the defense is inappropriate. See Blonder-Tongue Labs., Inc. v. U. of Ill. Found., 402 U.S. 313, 350 (1971) (discussing affirmative defenses of res judicata and collateral estoppel). Next, fairness is "a shorthand expression reflecting the judgment that all or most of the relevant information on a particular element of a claim is within the control of one party." Wright & Miller § 1271 at 603. Finally, probability places the burden of pleading an unusual occurrence on the party seeking to depart from ordinary legal assumptions. Id. at 604.

Unsurprisingly, federal courts have developed an extensive body of jurisprudence regarding whether a Rule 8(c) requires a defense be raised in a responsive pleading. For example, the majority view is that contract novation is an affirmative defense. Newkirk v. Village of Steger, 536 F.3d 771, 775 (7th Cir. 2008) ("Novation is an affirmative contract defense . . . ."); Ferguson v. F.D.I.C., 164 F.3d 894, 896 (5th Cir. 1999) (affirming district court's grant of summary judgment against defendant's affirmative defense of novation); Able Intern. Corp. v. B.P. Chems. Am., Inc., 145 F.3d 67, 68 (1st Cir. 1998) ("[N]ovation is an affirmative defense within scope of Fed.R.Civ.P. 8(c)."); Trane Co. v. Whitehurst-Lassen Const. Co., 881 F.2d 996, 1005 (11th Cir. 1989) (discussing "affirmative defense[] of . . . novation"); Publicker Indus., Inc. v. Roman Ceramics Corp., 603 F.2d 1065, 1071 (3d Cir. 1979) ("Novation is an affirmative defense . . . ."). Arizona follows the majority view in considering novation an affirmative defense. Van Waters & Rogers, Inc. v. Interchange Resources, Inc., 14 Ariz. 414, 418, 484 P.2d 26, 30 (App. 1971) (discussing "affirmative defense[] . . . [of] novation").

There is also widespread agreement that a defendant insurer seeking to deny a claim because an insured plaintiff breached insurance policy provisions constitutes an affirmative defense within the orbit of Rule 8(c). S. Wallace Edwards & Sons, Inc. v. Cincinnati Ins. Co., 353 F.3d 367, 372 (4th Cir. 2003) ("[B]reach of a provision of the policy by an insured is an affirmative defense under Rule 8(c)."); Jazzabi v. Allstate Ins. Co., 278 F.3d 979, 982 (9th Cir. 2002) (finding that insurer's argument that the insured breached policy to be an affirmative defense); VanHaaren v. State Farm Mut. Auto. Ins. Co., 989 F.2d 1, 5 (1st Cir. 1993) (discussing as affirmative defense insurer's argument that insured plaintiff had not complied with policy condition precedent); Transportation Ins. Co. v. Hamilton, 316 F.2d 294, 296 (10th Cir. 1963) (stating "breach of the fraud provision of the policy is an affirmative defense"); see Murphy v. Cincinnati Ins. Co., 772 F.2d 273, 278 (6th Cir. 1985) (discussing defendant insurer's affirmative defenses that insured had breached policy). Again, Arizona adheres to the majority rule and requires an insurer seeking to avoid paying a claim on the basis that the insured violated a provision of the insurance policy to affirmatively plead the matter. Porter v. Empire Fire & Marine Ins. Co., 106 Ariz. 274, 280, 475 P.2d 258, 264 (1970) (discussing insurer's affirmative defense that insured was precluded from recovery due to his breach of insurance policy).

In sum, whether the Court will consider a defense that allegedly falls under the umbrella of Rule 8(c) depends on a three-step inquiry: (1) whether the pleaded matter constitutes a matter in "avoidance or affirmative defense;" (2) whether that matter was properly raised in responsive pleading; and (3) whether nevertheless permitting the matter in subsequent pleadings would prejudice the adverse party. See Simmons, 609 F.3d at 1023.

**D.   Bad-Faith**

Whether defendant insurer operated in bad faith depends on whether there was any reasonable basis for the denial of Plaintiffs' claim. Noble v. Nat'l Am. Life Ins. Co., 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981). Denial of a claim is not unreasonable if, after adequate investigation, the claim's validity is "fairly debatable." Rawlings v. Apodaca, 151 Ariz. 149, 176, 726 P.2d 565, 572 (1986). "To recover punitive damages, the plaintiff must

1 . . . 'prove that defendant's evil hand was guided by an evil mind.'" Nardelli v. Metro. Group Prop. & Cas. Ins. Co., 230 Ariz. 592, 604, 277 P.3d 789, 801 (App. 2012) (quoting Rawlings, 151 Ariz. at 161, 726 P.2d at 577). It is not enough to merely show the defendant committed the tort of bad faith; rather the plaintiff must show either that the defendant "intended to injure the plaintiff" or that "although not intending to cause injury, defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm." Rawlings, 151 Ariz. at 162, 726 P.2d at 578.

## DISCUSSION

As mentioned above, Defendant's Motion for Partial Summary Judgment raises four issues: (1) whether credit bids constitute payment; (2) whether credit bids impaired CTIC's subrogation rights; (3) whether altering the terms of the loan agreement constitute novation; and (4) whether CTIC acted in bad-faith. (Doc. 100.) Plaintiffs' Motion for Partial Summary Judgment raises one issue: whether Plaintiffs are entitled to a final executable judgment. (Doc. 112.) The Court discusses these issues in seriatim.

**I.     Credit Bids Constitute Payments Under the Policies**

Defendant seeks summary judgment on the issue of whether Plaintiffs' full-credit bids at the trustee sale constituted "payments" under the Policies, thereby reducing the amount of insurance. (Doc. 100 at 6-8.) Plaintiffs opine that this argument is wholly irrelevant, that it is an affirmative defense under Rule 8(c), and that CTIC is estopped from raising the argument because it is inconsistent with their previous position concerning liability. (Doc. 115 at 4-13.) For the reasons that follow, the Court disagrees with Plaintiffs and finds not only that Defendant can raise their full-credit bids argument, but also that Plaintiffs' full-credit bids reduced the amount of insurance under the Policies to zero.

Paragraph nine of the Policies makes it clear that the amount of insurance is reduced by any satisfaction—in whole or in part—of the insured mortgage. Contrary to Plaintiffs' contention that CTIC's full-credit bid arguments "have no bearing on anything in this case," (Doc. 115 at 5), it is obvious that whether credit bids constitute payment under the Policies is particularly relevant. Indeed, Plaintiffs recognize that the disputed amount of insured

losses is central to this case. (Id. at 7.) Likewise, the Court cannot agree with Plaintiffs that the doctrine of quasi-estoppel precludes CTIC's credit-bid argument. CTIC has never claimed they were not liable to Plaintiffs for insured losses, and has always disputed the amount of insured losses. Because CTIC has not equivocated in their position regarding liability, the doctrine of quasi-estoppel is not implicated. See Sailes v. Jones, 17 Ariz. 593, 597, 499 P.2d 721, 725 (App. 1972) (discussing doctrine in terms of whether previous position was one in which party acquiesced to, or one from which they accepted benefit).

More salient is Plaintiff's renewed argument that the credit bid argument is an affirmative defense that CTIC waived when they failed to include it in their Answer pursuant Federal Rule of Civil Procedure 8(c).[2] (Doc. 115 at 5-7.) Specifically, Plaintiffs contend that their full-credit bids are unrelated to their prima facie case, and thus must have been affirmatively pled by CTIC. (Id. at 5-6.) Defendant replies that their credit bid argument undercuts Plaintiffs' claimed damages, and is therefore not an affirmative defense.

Again, the Court disagrees with Plaintiffs. CTIC's credit bid argument is not one that would prevent Plaintiffs from recovering even if all the allegations in their complaint were true. Rather, if credit bids constituted payment under the Policies, then the amount of insured losses were affected, thereby directly controverting the damages element of Plaintiff's prima facie case. The existence and measure of Plaintiffs' compensable loss has been contested from the outset of litigation, and Plaintiffs' Complaint acknowledged the Properties were acquired at trustee's sales pursuant to full-credit bid. Plaintiffs cannot claim surprise.

The Court finds that CTIC's credit bid argument can nevertheless be logically inferred from Plaintiffs' Complaint, and also that Plaintiffs' Complaint and subsequent filings demonstrate they understood the significance of their full-credit bids. Additionally, Plaintiffs were in possession of all information related to the Policies and their full-credit bids, and the full-credit bid argument is not a departure from ordinary legal assumptions. The Court thus

---

[2] Plaintiffs argued CTIC's credit bid argument was waived under Rule 8(c) in a motion to Strike, (Doc. 108), and again in a motion for reconsideration, (Doc. 116). The Court denied both motions. (Docs. 111, 117.)

- 10 -

1 concludes that CTIC's credit bid argument was not waived under Rule 8(c).

2 Having determined the credit bid argument proper, the Court shifts its analysis to whether Plaintiffs' credit bids constituted payment on the "principal of the indebtedness," thereby "reduc[ing] the amount of insurance pro tanto." (Doc. 102-1 at 16.) Defendant contends that lenders' full-credit bids at trustee's sales constitute actual payment against the principal of the underlying secured debt. (Doc. 100 at 6.) Plaintiffs respond that a lender's losses are not recouped by a credit bid because it returns no " 'actual' money" to the lender's pocket, that no Arizona authority supports Defendant's articulation of the full-credit bid rule, and that there is a bad faith exception to the full-credit bid rule. (Doc. 115 at 10-11.)

In support of their contention, Defendant cites two cases from this District: ING Bank, FSB v. Mata, 2009 WL 4672797, No. CV–09–748–PHX–GMS (D. Ariz. Dec. 3, 2009) (opinion by Snow, J.), and Coughlin, 805 F.Supp.2d at 858. In the context of a motion to dismiss, Mata concerned an agreement in which a lender agreed to fund residential mortgages submitted by an intermediary. 2009 WL 4672792 at *2. When a mortgage defaulted, the lender instituted a trustee's sale and acquired the property pursuant to a full-credit bid. Id. Thereafter, the lender brought suit for, inter alia, breach of contract, fraud, and tortious conduct. Id. Judge Snow reasoned that under Arizona's antideficiency statute, a full-credit bid fully satisfies the underlying debt obligation, thereby precluding lenders from either recovering for an alleged deficiency against third parties, or from "assert[ing] damages based on the value of the property." Id. at *5 (citing A.R.S. § 33-814(D)). Consequently, the lender's claims based on an alleged deficiency of the underlying loan were dismissed, but claims asserting damages arising from tortious conduct were not. Id. at *6.

Next, the defendant in Coughlin moved for judgment on the pleadings on the basis that the plaintiff's action was statutorily time-barred. 805 F.Supp.2d at 860. The relevant factual circumstances include: the defendant tricking plaintiff into funding a real-estate loan; subsequent default; the lender acquiring the property via less than full-credit bid at trustee's sale; and the lender's sale of that property for less than the deficiency. Id. Noting distinctions between Mata and the case before him, Judge Wake explained that a lender can avoid the

1  broad repercussions of full-credit bids "with respect to the lender's rights as against parties
2  outside the lender-borrower relationship, such as insurers, . . . by bidding what [the lender]
3  believes the property is worth." Id. at 866. Judge Wake's thorough analysis concluded by
4  delineating how the Arizona Supreme Court's decision in Nussbaumer necessarily assumes
5  full-credit bids extinguish the debtor's obligation to lender. Id. at 867-68.

6  Plaintiffs cite three Arizona cases in support of their twin contentions that full-credit
7  bids do not fully satisfy debtor's obligation to lenders, and that regardless of whether the
8  underlying obligation survives, lenders actions against parties outside the lender-borrower
9  relationship are not affected. (Doc. 115 at 10-11.) Quizzically, Plaintiffs cite MidFirst Bank
10 v. Chase, 230 Ariz. 366, 368, 284 P.3d 877, 879 (App. 2012), and Dewey v. Arnold, 159
11 Ariz. 65, 70, 764 P.2d 1124, 1129 (App. 1988), neither of which address the full-credit bid
12 rule, and instead discuss how the purchase price at a trustee's sale is not admissible evidence
13 of fair market value. Fair market value, and admissible evidence thereof, is inapposite to the
14 question of whether full-credit bids constituted payment under the terms of the Policies.

15 The third case cited is Nussbaumer,[3] which Plaintiffs argue stands for the proposition
16 that a party who overbids at a trustee's sale may seek relief where the excessive bid was due
17 to fraud. (Doc. 115 at 11 n.4.) The Court agrees with Plaintiffs that a full-credit bid does not
18 foreclose the possibility of tort actions, see Mata, 2009 WL 4672792 at *5-6, but disagrees
19 with Plaintiffs' reading of Nussbaumer. The trial court in Nussbaumer granted summary
20 judgment vacating a lender's full-credit bid in excess of market value at a foreclosure sale
21 because it was "painfully evident" that the "bid was a substantial unilateral mistake on the
22 part of the plaintiff's attorney." 107 Ariz. at 506, 489 P.2d at 845 (internal quotation
23 omitted). The Supreme Court of Arizona reversed, holding that the trial court abused its
24 discretion by setting aside the lender's overbid because it arose from the lender's "own
25 negligence, ignorance or inadvertence," rather than some "form of fraudulent inducement."

---

[3] While Plaintiffs declare in their Response that Defendant's reliance on Nussbaumer is "misplaced," (Doc. 115 at 11 n.4), CTIC does not rely on that case, let alone cite to it in its Motion for Partial Summary Judgment, (see Doc. 100).

1  Id. at 507, 489 P.2d at 846.

2        The Court finds that Plaintiffs' full-credit bids constitute payment under Paragraph
3  nine of the Policies. Arizona statutes and precedent leave no doubt that when a lender
4  acquires property pursuant to their full-credit bid, they are paying to themselves the entire
5  amount of unpaid principal, interest, and associated fees—as a result, both the security
6  interest and borrower's debt are extinguished. See A.R.S. §§ 33-801(5), 33-814(D);
7  Coughlin, 805 F.Supp.2d at 865-68; Mata, 2009 WL 4672792 at *4-6; 333 W. Thomas Med.
8  Bldg. Enters. v. Soetantyo, 976 F.Supp. 1298, 1301 (D. Ariz. 1995) (ruling in the context of
9  a lender's action for waste, "the full-credit bid expressly satisfied Plaintiff's deed of trust
10 interest"); Nussbaumer, 107 Ariz. at 506-07, 489 P.2d at 845-46. The Policies are
11 unambiguous in limiting the amount of insurance directly to the satisfaction of the underlying
12 mortgage. It is uncontroverted that Plaintiffs are "any person" and that they could pay to
13 themselves all or part of the insured obligation.

14       Thus, the amount of insurance was reduced to nil by Plaintiffs' payments to
15 themselves. It is also clear that Paragraph nine contemplates precisely the present scenario.
16 Consequently, Plaintiffs cannot now assert any damages based on the value of the property,
17 unless their overbids were fraudulently induced.

18       In an attempt to preserve the existence of the underlying secured obligations, Plaintiffs
19 claim that they would not have made full-credit bids but for CTIC's bad faith, deceit, a
20 "hidden agenda," and "undisclosed, self-serving interpretations of its Policies." (Doc. 115
21 at 11 n.4.) However, that allegation is neither supported by citation to materials in the record,
22 nor do Plaintiffs provide significant probative evidence. See Bahrampour, 356 F.3d at 974.
23 The documents governing the transaction were equally known to all parties. To the extent
24 Plaintiffs were negligent, ignorant, or inadvertent in acquiring the Properties by full-credit
25 bids, that mistake was theirs to make. See Nussbaumer, 107 Ariz. at 508, 489 P.2d at 847
26 ("[T]he rule of 'caveat emptor' applies to purchasers at execution sales.").

27       In sum, the Court concludes that, as a matter of law, Plaintiffs' full-credit bids
28 constituted payments against the principal of indebtedness according to the terms of the

1 Policies, and that the amount of insurance was thereby reduced to zero.

2 **II.    CTIC's Subrogation Argument is an Affirmative Defense**

3 Defendant next seeks summary judgment on the issue of whether Plaintiff's full-credit
4 bids impaired CTIC's contractual subrogation rights under Paragraph 12 of the Policies.
5 (Doc. 100 at 8-9.) In effect, Defendant seeks to deny Plaintiffs' claims because Plaintiffs
6 violated provisions of the Policies that would have conferred remedial rights upon CTIC.
7 Plaintiffs' assert that this is an affirmative defense that CTIC waived because it was not
8 raised in the Answer. (Doc. 115 at 11-13.) Defendant replies that their subrogation argument
9 goes to show Plaintiffs suffered no compensable losses. (Doc. 118 at 2-3.)

10 The Court agrees with Plaintiffs. Seeking to deny Plaintiffs' claims on the basis that
11 Plaintiffs diminished CTIC's contractual subrogation rights is an affirmative defense that
12 must be raised in the responsive pleading pursuant to Rule 8(c). See Jazzabi, 278 F.3d at 982;
13 Porter, 106 Ariz. at 280, 475 P.2d at 264. The Court finds Plaintiffs would be prejudiced if
14 the subrogation argument were now considered. Specifically, Plaintiffs fairly believed that
15 CTIC had forgone their subrogation rights based on CTIC's denial of Plaintiffs' claims and
16 by CTIC's subsequent tender of $343,000 in satisfaction of those previously denied claims.
17 Considering CTIC did not allege Plaintiffs violated the Policies until almost two years after
18 the alleged violations occurred, and almost 18 months of proceedings in federal court,
19 allowing CTIC to raise their subrogation argument for the first time in its motion for
20 summary judgment would unfairly impair Plaintiffs' legal rights. Thus, the Court deems
21 CTIC to have waived their subrogation argument under Rule 8(c), and will not consider it
22 in CTIC's motion for partial summary judgment.

23 **III.   CTIC's Novation Argument is an Affirmative Defense**

24 The Court's Order of September 6, 2012, interpreted the Policies to mean that the
25 appropriate date to value Plaintiffs' loss was the date EIP made the loans—May 10, 2006.
26 (Doc. 46.) CTIC seeks summary judgment on the issue of whether amendments to the loan
27 agreements constitute novations, thereby establishing November 2, 2009 as the date EIP
28 made the loans. (Doc. 100 at 9-11.) Plaintiffs argue that the date EIP made the loans was

1  meant to reflect the insured interest's value at the time it was insured. (Doc. 115 at 4-5, 13.)
2  CTIC did not directly address the matter in their Reply. (Doc. 118)

3  The Court agrees with Plaintiffs. While CTIC's novation argument is novel, the
4  rationale behind Court's Order of September 6, 2012, was precisely that the appropriate date
5  for calculating the insured interest's value was "the time it was insured." (Doc. 46 at 10.)
6  Regardless, novation is an affirmative defense that must be raised in a responsive pleading.
7  See Van Waters & Rogers, Inc., 14 Ariz. at 418, 484 P.2d at 30. Considering it has been
8  clearly established that May 10, 2006, is the date to determine the value of the Properties, the
9  Court finds Plaintiffs would be prejudiced by allowing CTIC to argue novation. Therefore,
10 like their subrogation argument, CTIC also waived their novation argument.

**IV.     Whether CTIC Acted with Bad Faith is Genuinely Disputed**

Defendant's final issue for summary judgment is that CTIC has not acted with bad faith, and thus Plaintiffs are not entitled to punitive damages. (Doc. 100 at 11-17.) Plaintiffs assert that CTIC lacked any reasonable basis to deny Plaintiffs' claims and that CTIC engaged in a pattern of misconduct; thus, a finding that CTIC's conduct was wilful and/or deliberate would support an award of punitive damages. (Doc. 115 at 13-17.) CTIC argues no reasonable juror could find CTIC acted with the requisite evil mind. (Doc. 118 at 11.)

The Court agrees with Plaintiffs. Resolving all facts and inferences in Plaintiffs' favor, it is possible a jury could find that there was no reasonable basis for CTIC to deny Plaintiffs' first claim under the Policies for lack of access solely because it lacked adequate proof of losses. See Zilisch v. State Farm Mut. Auto. Ins. Co., 196 Ariz. 234, 238, 995 P.2d 276, 280 (2000) (quoting Deese v. State Farm Mut. Auto. Ins. Co., 172 Ariz. 504, 509, 838 P.2d 1265, 1270 (1992)) ("[I]f an insurer acts unreasonably in the manner in which it processes a claim, it will be held liable for bad faith 'without regard to its ultimate merits.' "). Thus, as was the case in Mata, only Plaintiff's tortious conduct claim survives this order.[4] 2009 WL 4672792

---

[4] Plaintiffs' other two claims—bad faith and breach of the duty of good faith and fair dealing—are actually the same claim. See Rawlings, 151 Ariz. at 153-54, 726 P.2d at 569-70.

- 15 -

at *6. Further, assuming Plaintiffs proved bad faith, they may also be able to prove CTIC's conduct was wilful and deliberate, which would allow recovery of punitive damages. See Nardelli, 230 Ariz. at 604, 277 P.3d at 801. Thus, genuine disputes exist as to bad faith and punitive damages. See Anderson, 477 U.S. at 248.

**V.     The Amount of Plaintiffs Compensable Damages are Genuinely Disputed**

Plaintiffs seek summary judgment on the issue of whether they are entitled to a final executable judgment against Defendant based on: May 10, 2006, as the date for valuation of loss; Defendant's admission Plaintiffs suffered compensable loss; and Defendant's expert valuation based on the date of valuation. (Doc. 112 at 1-2.) CTIC responded that the amount of insurance diminished to zero as a result of Plaintiff's credit bids, and thus Plaintiffs suffered no compensable losses. (Doc. 119 at 2-3.) CTIC further contends the amount of damages are genuinely disputed. (Id. at 4.) Plaintiffs reply that there is no dispute that they are entitled to at least an additional $1,003,000. (Doc. 121 at 1.)

The Court agrees with Defendant. Under the Policies, Plaintiffs were only insured to the same extent the underlying obligation remained unsatisfied. In light of the Court's determination that full-credit bids reduced the amount of insurance under the Policies to zero, Plaintiffs are not necessarily entitled to any compensable damages.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED granting in part** Defendant Chicago Title Company's Motion for Partial Summary Judgment solely on the issue of whether Plaintiff's full-credit bids constituted payments against the principal under the Policies, thereby extinguishing the underlying secured obligation. (Doc. 100.)

**IT IS FURTHER ORDERED denying in part** Defendant Chicago Title Company's Motion for Partial Summary Judgment on the remaining issues of subrogation, novation, and bad faith. (Doc. 100.)

**IT IS FURTHER ORDERED denying** Plaintiffs' Motion for Partial Summary Judgment Re: Undisputed Damages. (Doc. 112.)

1 **IT IS FURTHER ORDERED** setting a status conference hearing for **Tuesday,
2 December 17, 2013, at 2:30 p.m.** in Courtroom 605, 401 West Washington Street, Phoenix,
3 AZ before Senior Judge Stephen M. McNamee. The parties shall come prepared to discuss
4 the status of the proceedings as a result of this Order.

DATED this 10th day of December, 2013.

*[signature]*

Stephen M. McNamee
Senior United States District Judge